## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
-------------------------------x
MARILYN MILLER and PAUL MILLER, :
                                :
         Plaintiffs,            :
                                :
v.                              :    CASE NO. 3:09CV1024(AWT)
                                :
JOANNE FAULKNER and TINA PACHECO,:
                                :
         Defendants.            :
-------------------------------x
TINA PACHECO,                   :
                                :
    Counterclaim-Plaintiff,     :
                                :
v.                              :
                                :
MARILYN MILLER,                 :
                                :
    Counterclaim-Defendant.     :
-------------------------------x
```

### ORDER RE MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM

Defendant/counterclaim plaintiff, Tina Pacheco ("Pacheco"), has moved for summary judgment on her counterclaim pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") against plaintiff/counterclaim defendant, Marilyn Miller, requesting $1,000 in statutory damages pursuant to 15 U.S.C. § 1692k, plus attorneys' fees and costs.  For the reasons set forth below, Pacheco's motion for summary judgment is being granted.

### I. FACTUAL BACKGROUND

Joseph McMahon Corporation, which has as its registered trade name "United Obligations", is in the business of collecting consumer debts and is a licensed consumer collection agency.

Marilyn Miller is its president and CEO, and she holds 95% of the outstanding shares of stock of Joseph McMahon Corporation.  As the president and CEO of Joseph McMahon Corporation, she personally reviewed every file submitted by Paul Miller for collection.  Paul Miller submitted to Joseph McMahon Corporation two accounts on which Pacheco was the debtor.  One was an account for Dr. Ben Schultz and the other was an account for Dr. Paul Dengelegi.

Marilyn Miller made several telephone calls to the home of Pacheco, announcing herself as a debt collector each time, and on each occasion, once Pacheco learned that Marilyn Miller was calling about the debts assigned by Dr. Shultz and Dr. Dengelegi to Paul Miller, Pacheco hung up the telephone.  Thereafter, Marilyn Miller initiated litigation against Pacheco.

Also thereafter, on or about March 2, 2009, Marilyn Miller made what she viewed as a final attempt to reach an accord with Pacheco.  Marilyn Miller called Pacheco and left the following message on Pacheco's answering machine:

> Hey, um, this is a message for Tina.  I hope I have the right number.  It's Tina Pacheco.  Uh, Tina, I'm, uh, the mother of Billy and Bobbie McMahon.  They're friends with Jeremie, um, at Ludlowe.  Could you, . . . I'm going to give you my cell number, this is my home line, but give me, call me on my cell, which is 257-4394.  Um, I'm also in the DTC, I don't know if you remember me.  But anyway, give me a call at 257-4394.  Thanks, again, my name is Marilyn Miller.  Thanks.

(Counterclaim Plaintiff's Local Rule 56(a)1 Statement (Doc. No.

14-2) ¶ 2 Exhibit).  Pacheco's caller id showed that the call came from 203-292-5326.

Pacheco was worried that something had happened involving their respective children, so she called the cell phone number left by Marilyn Miller.  After several rings, the cell phone number went to a voicemail stating that she had reached "United Obligations."  Pacheco then called back the number that had appeared on her caller id, which Marilyn Miller had identified as Miller's home line.  Marilyn Miller answered and reminded Pacheco that she was the mother of Bobby and Billy McMahon, and then proceeded to discuss with her the two debts.

Although Marilyn Miller avers that she made the March 2, 2009 call to Pacheco with the intention of trying to be sensitive to the relationship between Miller's two sons and Pacheco's minor son Jeremy, the records of Joseph McMahon Corporation show an entry for the March 2, 2009 call from Marilyn Miller to Pacheco for both the Shultz and Dengelegi accounts.  Thus, the call was made in relation to the business of Joseph McMahon Corporation, for the purpose of collecting a debt.

## II.  STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law.  See Rule 56(c), Fed. R. Civ. P.; Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  The moving party may satisfy this burden by demonstrating the absence of evidence supporting the nonmoving party's case.  See PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). The court construes the facts in the light most favorable to the nonmoving party.  See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir. 2002), cert. denied, 127 S. Ct. 382 (2006).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the nonmoving party must do more than vaguely assert the existence of an unspecified disputed material fact or offer speculation or conjecture.  See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).  If the nonmoving party does not respond to the motion, the court may accept as true the moving party's factual statements.  See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in [the moving party's Rule 56(a)1 statement will be deemed admitted unless controverted....).  Even if the motion is unopposed, however, the court will not grant summary judgment unless it determined that the moving party is entitled to judgment as a matter of law.  See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004).

**III.  DISCUSSION**

"At its heart, the [FDCPA] is a consumer protection statute,

and violators are subject to strict liability.  Thus, a single violation of section 1692e is sufficient to establish civil liability under the FDCPA.  <u>See</u> 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter")."  <u>Fields v. Western Mass. Credit Corp.</u>, 479 F. Supp. 2d 287, 290 (D. Conn. 2007)(citation omitted).  There is no genuine issue as to the fact that Pacheco was a consumer, and the fact that Marilyn Miller was a debt collector.  Pacheco contends that Marilyn Miller committed at least two violations of the FDCPA.

Pacheco contends that Marilyn Miller violated § 1692e(11).  "Section 1692e prohibits the 'false representation of . . . the character, amount, or legal status of any debt.'"  <u>Chiverton v. Federal Financial Group, Inc.</u>, 399 F. Supp. 2d 96, 101 (D. Conn. 2005).  Specifically, § 1692e(11) is violated when the debt collector fails to disclose her identity when attempting to collect a debt.  The record reflects that on March 2, 2009 Marilyn Miller called Pacheco for purposes of collecting a debt in connection with her business, Joseph McMahon Corporation. Marilyn Miller left a voice message leaving a phone number, which she stated was her cell phone, but was in actuality a business telephone line for United Obligations.  Marilyn Miller failed to disclose in the telephone call that she was a debt collector or that she was calling on behalf of United Obligations.  This

constituted a violation of § 1692e.  See e.g., Ostrander v.
Accelerated Receivables, 2009 U.S. Dist. LEXIS 27321, * 16-18
(W.D.N.Y. Mar. 31, 2009) (providing examples of failure to
disclose that telephone messages were from a debt collector).

Pacheco also contends that Marilyn Miller violated
§ 1692d(6).  "Section 1692d prohibits 'any conduct the natural
consequence of which is to harass, oppress, or abuse any person
in connection with the collection of a debt.'"  Chiverton v.
Federal Financial Group, Inc., 399 F. Supp. 2d 96, 101 (D. Conn.
2005).  "In the particular instance of telephone calls placed
directly to a debtor, the FDCPA requires only that a debt
collector make a 'meaningful disclosure of the caller's
identity.'  15 U.S.C. § 1692d(6)."  Johnson v. NCB Collection
Services, 799 F. Supp. 1298, 1303 (D. Conn. 1992).  Here, the
record reflects that Marilyn Miller contacted Pacheco, and left
her a voice mail message with the intention of collecting a debt,
and disclosed her identity as the mother of friends of Pacheco's
son.  Thus, Marilyn Miller failed to make a meaningful disclose
of her identity as a debt collector.  See e.g., Edwards v.
Niagara Credit Solutions, Inc., 586 F. Supp. 2d 1346, 1351-53
(N.D. Ga. 2008).

Accordingly, counterclaim defendant Marilyn Miller committed
at least two violations of the FDCPA in connection with her March
2, 2009 telephone call to counterclaim plaintiff Pacheco, and

6

counterclaim plaintiff Pacheco is entitled to summary judgment on her FDCPA counterclaim.[1]

**IV.   CONCLUSION**

For the reasons set forth above, defendant/counterclaim plaintiff Pacheco's Motion for Summary Judgment (Doc. No. 14) is hereby GRANTED.  The Clerk shall enter judgment in favor of the defendant/counterclaim plaintiff Pacheco on her FDCPA counterclaim (Doc. No. 4) in the amount of $1,000, plus attorneys' fees and costs.

It is so ordered.

Signed this 25th day of March, 2010 at Hartford, Connecticut.


                                  /s/AWT
                         Alvin W. Thompson
                         United States District Judge

---

[1]The counterclaim plaintiff also asserted claims pursuant to the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. and the Connecticut Consumer Collection Agency Act, Conn. Gen. Stat. § 36a-800 et seq., but her motion for summary judgment addresses the FDCPA claim only.  However, default has been entered against Marilyn Miller on all the counterclaims.